UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------X
GOLDBERG COHEN, LLP,

        Plaintiff,

    - against -           **MEMORANDUM AND ORDER**

LUV N' CARE, LTD. and ADMAR      16 Civ. 6576 (NRB)
INTERNATIONAL, INC.,

        Defendants.
------------------------------X
**NAOMI REICE BUCHWALD**
**UNITED STATES DISTRICT JUDGE**


    Plaintiff Goldberg Cohen LLP ("Goldberg Cohen") brought this action asserting claims of, <u>inter alia</u>, breach of contract, <u>quantum meruit</u>, and violation of New York Judiciary Law § 487 against defendants Luv n' Care Ltd. and Admar International, Inc. (together, "LNC").  After LNC answered the complaint and asserted counterclaims, but before the commencement of discovery, Goldberg Cohen moved for partial summary judgment on its own breach of contract claim.  For the following reasons, Goldberg Cohen's motion is denied.

<u>**BACKGROUND**</u>

    Goldberg Cohen performed legal services for LNC (a manufacturer of baby products) from 2010 until 2014, including representing LNC in a number of lawsuits involving intellectual property and other commercial claims.  Among the cases Goldberg

Cohen handled for LNC was <u>Luv n' care, Ltd. v. Jackel International</u> <u>Ltd.</u>, No. 10-1891 (La. 4th Jud. Dist. Ct., Ouachita Parish) ("<u>Jackel</u>").

Goldberg Cohen's complaint alleges that it and LNC had a retainer agreement (the "Retainer") providing that Goldberg Cohen would provide legal services, including representation in certain litigation matters, to LNC in exchange for a combination of weekly fees and contingency payments.  The parties do not dispute that they agreed to the Retainer.  The detailed, six-page Retainer provides for weekly fees of $8653.85 "in return for GC's services regarding all legal aspects of intellectual property representation," including "the pursuit" of certain "litigations" set forth in the Retainer, namely "Jackel" and three others. Compl. Ex. A.  It further provides for contingency fees "in addition," specifying a 15% fee for "litigation[] . . . to be brought against . . . Jackel."  <u>Id.</u>

The Retainer contains a provision capping the total amount of weekly fees at $1.25 million, but it also provides that "each mutually agreed litigation shall add $250K to the $1.25 million cap listed above," and that the parties will negotiate the contingency fees for additional litigations before commencement. <u>Id.</u>

Section 7 of the Retainer (titled "Entire Agreement") states, "This letter reflects the entire agreement and understanding between us.  No amendment or modification will be effective unless set forth in writing and signed on Your behalf and GC."  Id.

Goldberg Cohen alleges, however, that the parties orally modified the Retainer to increase Goldberg Cohen's compensation for its work on the Jackel litigation.  Goldberg Cohen's main "evidence" of this alleged modification is a memorandum of law (the "Jackel Brief") submitted by LNC to the Jackel court on March 22, 2013 in support of LNC's motion for the entry of a permanent injunction and an award of attorney's fees after LNC won a jury verdict against Jackel.  The brief was drafted by Goldberg Cohen, bore its name, and bore LNC general counsel Joe Guerriero's handwritten signature.  Compl. Ex. B.

The parties do not dispute the existence of the Retainer or that LNC filed the Jackel Brief.  However, declarations submitted by LNC's CEO, Nouri Hakim, and LNC's general counsel, Guerriero, dispute that LNC ever agreed to the alleged oral modification.  Rather, LNC, Hakim (who had sole negotiating authority), and Guerriero essentially claim that Goldberg Cohen fraudulently induced them into signing the Jackel Brief.  Hakim states that he discussed the matter of submitting an application for attorneys' fees in the Jackel case with Goldberg Cohen.  According to Hakim,

Goldberg Cohen told him that it had not kept records of its time or tasks in the Jackel case.  Moreover, the weekly fixed fees LNC paid Goldberg Cohen were not allocated to any specific case, and Goldberg Cohen never sent LNC an invoice or other time record. According to Hakim, Goldberg Cohen proposed submitting an "enhanced" fee proposal to the Jackel court because the fees in the Retainer were too low and the court was not limited to the Retainer amount but could award "reasonable fees."  Hakim was assured that this was permissible, and told Goldberg Cohen they could do whatever they thought was best in their professional judgment.  Decl. of Nouri E. Hakim in Opp. ¶ 12.

LNC next contends that Goldberg Cohen misled Guerriero into believing that Hakim had agreed to the alleged modification, and thus Guerriero did not realize that the brief Goldberg Cohen drafted and submitted falsely alleged an oral modification under which LNC would pay Goldberg Cohen $2 million plus a 20% (rather than 15%) contingency fee for its work on Jackel.  However, emails introduced by Goldberg Cohen indicate that Guerriero and Hakim were included on emails sent in the days leading up to submission of the Jackel Brief, in which Goldberg Cohen represented to opposing counsel that these same terms were the terms of its fee arrangement with LNC, and discussed the attorneys' fees part of the draft Jackel Brief with Guerriero.  Indeed, Guerriero even

told Goldberg Cohen in an email that Hakim had weighed in on aspects of the Jackel Brief's discussion of attorneys' fees.

After the submission of the brief, LNC and Jackel reached a settlement and thus the Louisiana court did not have occasion to evaluate the claim for attorneys' fees.  Goldberg Cohen alleges that LNC breached the alleged modification by refusing to pay more than $1 million in weekly fees attributable to the Jackel case and the additional 5% ($80,000) of the amount recovered from the Jackel defendants in the settlement.

Goldberg Cohen submits no testimony regarding the facts and circumstances of the alleged modification.  It has conceded that it did not keep records of its time spent on LNC matters, that it has no documentary evidence of the alleged oral modification other than the Jackel Brief, the emails described above, and records showing the amount of LNC's weekly payments to Goldberg Cohen (which increased to $12,999.99 in April 2012 and to $16,730 in February 2013, and then returned to $8653.85 in December 2013 and ceased in July 2014).

## DISCUSSION

Summary judgment is appropriate where "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law."  Fed.

R. Civ. P. 56(c).  The moving party bears the initial burden of demonstrating "the absence of a genuine issue of material fact." Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).  If that burden is met, the opposing party must come forward with evidence demonstrating the existence of a genuine dispute of material fact. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249 (1986).  In determining whether there is a genuine issue as to any material fact, "[t]he evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor."  Id. at 255.

Goldberg Cohen presents several arguments for why it should be entitled to summary judgment on its breach of contract claim. Its first argument is that the Jackel Brief evidences an enforceable modification of the Retainer.  Goldberg Cohen relies on New York General Obligations Law § 15-301(1) ("GOL 15-301(1)") and the New York Court of Appeals's decision in DFI Communications, Inc. v. Greenberg, 41 N.Y.2d 602 (1977).  The parties agree that New York law applies, as the Retainer provides that it is to be governed by New York law.

GOL 15-301(1) provides, "A written agreement or other written instrument which contains a provision to the effect that it cannot be changed orally, cannot be changed by an executory agreement unless such executory agreement is in writing and signed by the

party against whom enforcement of the change is sought or by his agent." N.Y. Gen. Oblig. Law § 15-301(1) (McKinney).

In DFI, the Court of Appeals was presented with a contract between a corporation and one of its shareholders, also a vice president ("VP") of the corporation, for the VP to purchase shares in the corporation at certain specified annual intervals. The court held that, as a matter of law, the contract may have been modified pursuant to GOL 15-301(1) as reflected in minutes from one of the corporation's board meetings, which stated that the board had agreed with the VP to modify the contract. In reaching this result, the court held that the minutes had the requisite level of "dignity of a formal writing to insure the validity and genuineness" of the alleged modification, as required by GOL 15-301(1). 41 N.Y.2d at 606-07. The court noted that the minutes were allegedly drafted and signed by the corporation's secretary. These factors made the minutes better evidence than a mere "note" or "memorandum" reflecting contractual terms, which the Court said would be insufficient to satisfy GOL 15-301(1) even though such documents might satisfy the statute of frauds. Id. at 606. Significantly for our purposes, the Court also emphasized that the minutes "contained" "the complete amendatory agreement between the parties" "as well as the board's reasons for its adoption," making

the case distinguishable from a case involving an "abbreviated or incomplete expression" of the parties' agreement.  Id.[1]

LNC contends, inter alia, that the Jackel Brief does not have the characteristics necessary to qualify as an amendment pursuant to GOL 15-301(1).

We concur.  First, the discussion of the alleged fee arrangement in the brief does not have the requisite clarity or completeness.  This is shown, for example, by the fact that a crucial term of the supposed modification --- how much of the weekly payment would be allocated to Jackel -- is explained only in passing in a step-by-step calculation: "This amount [$1,309,034.45] is divided by two because only half of each week's retainer payment was to be allocated to this case."  Br. at 29. Moreover, the brief does not explain at all how the alleged new fee arrangement, specific to the Jackel case, was to be reconciled with the very differently structured Retainer, which imposed a global $1.25 million cap on weekly payments.  What effect did this supposed new $2 million payment for work on Jackel have on that global payment cap?  The brief contains no answer.  These ambiguities, omissions, and confusing features make the brief the very sort of "abbreviated or incomplete" expression that is

---

[1] The only issue preventing the court from fully concluding that the contract was indeed modified under GOL 15-301(1) was a factual question not relevant here, which the court held could be determined on remand.

inadequate under DFI.  41 N.Y.2d at 606; see also Klein v. Jamor Purveyors, Inc., 108 A.D.2d 344, 349-50 (2d Dep't 1985) (writing insufficient under GOL 15-301(1) in part because it "failed to set forth the essential terms of the oral agreement alleged"). Finally, it is significant on these facts that Goldberg Cohen does not dispute that it drafted the brief.  That further distinguishes this case from DFI, where the party to be charged, not the charging party, drafted the writing.

Alternatively, Goldberg Cohen argues that the Retainer was effectively modified through the parties' course of actual performance.  "[A]ny written agreement, even one which provides that it cannot be modified except by a writing signed by the parties, can be effectively modified by a course of actual performance."  Rosen Trust v. Rosen, 53 A.D.2d 342, 352 (4th Dep't 1976), aff'd sub nom. Harold J. Rosen Trust v. Rosen, 43 N.Y.2d 693 (1977).  However, "only if the partial performance be unequivocally referable to the oral modification is the requirement of a writing under section 15-301 avoided."  Rose v. Spa Realty Assocs., 42 N.Y.2d 338, 343-44 (1977).

Pointing to the additional matters that it handled beyond those listed in the Retainer, and the fact that LNC increased the weekly payments in 2012 and again in 2013, Goldberg Cohen argues

that that conduct is inconsistent with the Agreement and consistent only with the modification.

This argument fails badly. Goldberg Cohen has not even come close to establishing that there is no genuine issue of fact as to whether its performance is "unequivocally referable" the alleged oral modification. First, there was no need for an oral modification as the Retainer itself provided for mechanisms for Goldberg Cohen to receive additional payment for additional matters beyond those listed in the Retainer. Specifically, the Retainer provided that "each mutually agreed litigation shall add $250K to the $1.25 million cap," and that "the contingency fee on any litigations not yet filed or not identified above . . . will be negotiated in good faith prior to the filing of a complaint or the drafting of a cease and desist letter." Retainer § 3. Second, it is undisputed that Goldberg Cohen made more than $2,350,350 million in weekly fees over the course of the three to four year period in which it actively represented LNC, and based on the Jackel recovery and Goldberg Cohen's acknowledgment at oral argument of other contingency fees received, it appears that Goldberg Cohen made upward of $3 million in total fees during this period. Far from indicating that Goldberg Cohen's conduct was "unequivocally referable" to the alleged modification and to Jackel alone, these facts seem quite compatible with performance under the Retainer. These same facts are similarly fatal to

Goldberg Cohen's argument that, because LNC induced Goldberg Cohen's substantial reliance on the modification, LNC should be estopped from arguing that it did not agree to the modification. See Rose, 42 N.Y.2d at 344 ("[c]omparable to the requirement that partial performance be unequivocally referable to the oral modification, so, too, conduct relied upon to establish estoppel must not otherwise be compatible with the agreement as written."). Goldberg Cohen's reliance argument also suffers from the lack of any evidence of modification prior to the work on the Jackel case or, indeed, prior to the Jackel verdict.

Finally, Goldberg Cohen argues that LNC is bound by the Jackel Brief as a judicial admission.  It is ironic that Goldberg Cohen, as the drafter of the Jackel Brief, seeks to characterize it as an admission by LNC, especially when LNC takes the position that the brief was an attempt to work a fraud on the Louisiana court.

Having resolved the instant motion, the parties are reminded of the concerns expressed by the Court at oral argument over the conduct of the parties and their counsel before the Louisiana court and, derivatively, before us as they contemplate how to proceed.

## CONCLUSION

For the reasons stated above, Goldberg Cohen's motion for summary judgment is denied.

**SO ORDERED.**

Dated:     New York, New York
           August 17, 2017

NAOMI REICE BUCHWALD
UNITED STATES DISTRICT JUDGE