UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------X

GOLDBERG COHEN, LLP,

        Plaintiff,

    - against -

LUV N' CARE, LTD. and ADMAR
INTERNATIONAL, INC.,

        Defendants.

------------------------------------------X

LUV N' CARE, LTD. and ADMAR
INTERNATIONAL, INC.,

        Counterclaim Plaintiff,

    - against -

GOLDBERG COHEN, LLP, LEE A. GOLDBERG,
and MORRIS E. COHEN,

        Counterclaim Defendants.

------------------------------------------X

**MEMORANDUM AND ORDER**

16 Civ. 6576 (NRB)

**NAOMI REICE BUCHWALD**
**UNITED STATES DISTRICT JUDGE**

    In this family drama masquerading and manifesting itself as a number of federal court cases, defendants Luv N' Care, Ltd. and Admar International, Inc. (collectively, "LNC") assert 21 counterclaims against plaintiff Goldberg Cohen, LLP (GC) and its two name partners, Lee A. Goldberg and Morris E. Cohen, alleging legal malpractice, breach of contract, and other assorted causes of action in response to GC's claims arising out of the legal services that GC rendered to LNC in an earlier litigation. Counterclaim defendants move to dismiss under Rule 12(b)(6) of the

Federal Rules of Civil Procedure. As we will explain, the motion is granted in part and denied in part.

## I. Background

We recite only briefly the facts as presented in LNC's counterclaim allegations, as the focus of the parties' dispute is not the factual sufficiency of LNC's counterclaims. Rather, they primarily dispute issues of claim preclusion and statutes of limitations, and we accordingly devote more effort to the procedural history of the case.

### A. Cohen and GC Come to Represent LNC

LNC is a manufacturer of baby products. Am. Countercl. ¶ 28, ECF No 60. Cohen, a nephew of LNC's founders, is an attorney, as is Goldberg. Am. Countercl. ¶¶ 5-6, 15. Cohen has represented LNC in most of its intellectual property matters since graduating from law school, and has done so while affiliated with a number of different law firms. Am. Countercl. ¶ 20. One such firm was Shiboleth LLP, where Cohen held an "of counsel" position. Am. Countercl. ¶ 48. LNC retained Cohen and Shiboleth in 2008 to represent it in a number of cases, including in a suit against Walgreens.[1] Am. Countercl. ¶ 49.

In 2010, during the pendency of the <u>Walgreen</u> action, Goldberg and Cohen formed GC. Am. Countercl. ¶¶ 20, 25.[2] GC and LNC entered

---

[1] <u>Luv n' Care, Ltd. v. Walgreen Co.</u>, No. 08 Civ. 4457 (S.D.N.Y.).
[2] Goldberg and Cohen filed notices of change of address in the <u>Walgreen</u> action, identifying GC as their firm, on August 24, 2010. <u>See</u> 08 Civ. 4457 ECF Nos. 116, 117.

into a retainer agreement on August 1, 2010, under which GC agreed to represent LNC in a number of LNC's intellectual property matters -- including the then-ongoing <u>Walgreen</u> action -- in exchange for the weekly payment of a fixed amount as well as specified contingency fees. <u>See</u> Retainer Agreement, ECF No. 63-1. Other matters handled by GC for LNC included two cases in Louisiana State Court and a subsequent action in federal court in the Eastern District of Texas against Jackel International[3]; a suit against Philips Electronics in the Eastern District of Texas[4]; a suit against Royal King Infant Products Co. in the Eastern District of Texas[5] (collectively, the "<u>Jackel</u> litigations"); a suit against Toys "R" Us in this district;[6] and two inter partes review (IPR) proceedings before the Patent Trial and Appeal Board (PTAB) involving U.S. Patent No. 617,465 (the '465 Patent) and U.S. Patent No. 634,439 (the '439 Patent). <u>See</u> Answer at 14-16, ECF No. 60; Am. Countercl. ¶ 293.

The relationship between LNC and GC apparently soured over the course of these representations, and the Retainer Agreement was terminated in September 2014, after having been in effect for

---

[3] <u>Luv N' Care, Ltd. v. Jackel Int'l Ltd.</u>, No. 10-1891 (La. 4th Jud. Dist. Ct., Ouachita Parish); <u>Luv N' Care, Ltd. v. Jackel Int'l Ltd.</u>, No. 13-1437 (La. 4th Jud. Dist. Ct., Ouachita Parish); <u>Luv N' Care, Ltd. v. Jackel Int'l Ltd.</u>, No. 2:14-CV-00855 (E.D. Tex.).

[4] <u>Luv N' Care, Ltd. v. Koninklijke Philips Elecs. N.V.</u>, No. 2:11-cv-512 (E.D. Tex.).

[5] <u>Luv N' Care, Ltd. v. Royal King Infant Prods. Co.</u>, No. 2:10-cv-461 (E.D. Tex.).

[6] <u>Luv N' Care, Ltd. v. Toys "R" Us, Inc.</u>, No. 12 Civ. 228 (S.D.N.Y.).

about four years.  Am. Countercl. ¶ 70.  The tortured saga of this case and the related case, captioned Luv N' Care, Ltd. v. Goldberg Cohen, LLP, No. 15 Civ. 9248 (S.D.N.Y. filed Nov. 23, 2015), then began.

## B.  LNC's First Case Against GC

LNC filed the related case on November 23, 2015.  LNC alleged "claims of legal malpractice arising out of four matters in which they were represented by GC, Goldberg, and Cohen" -- the Jackel litigations, the Philips litigation, the Royal King litigation, and the Toys "R" Us litigation.  Luv N' Care Ltd. v. Goldberg Cohen, LLP (LNC I), No. 15 Civ. 9248, 2016 WL 4411419, at *2-3 (S.D.N.Y. Aug. 18, 2016).

LNC's initial complaint asserted three claims.  Claim 1 alleged legal malpractice based on GC's failure to "timely include allegations related to a certain line of hard-top cups for children produced by [the defendant]" in the Jackel litigations.  Id. at *2.  Claim 2 alleged legal malpractice based on Cohen's failure to withdraw a disclaimer made in connection with a certain patent that resulted in LNC losing the Philips litigation over five derivative patents.  Id. at *3.  Claim 3 alleged legal malpractice based on GC's failure to "timely seek recovery of attorney's fees" in the Royal King litigation.  Id.

GC, Goldberg, and Cohen filed pre-motion letters in anticipation of a motion to dismiss, and we sua sponte granted LNC

4

leave to file an amended complaint prior to GC's motion. See Dec. 22, 2015 Order, 15 Civ. 9248 ECF No. 16. LNC filed an amended complaint on January 5, 2016, see 15 Civ. 9248 ECF No. 18, which added two claims, Claims 4 and 5, each alleging legal malpractice "in connection with [GC's] defense of two patents" at issue in the Toys "R" Us litigation, the '465 patent and the '439 patent, by "adopt[ing] a flawed strategy of seeking to amend the challenged patents rather than attack on the merits the potential grounds for invalidation" in inter partes review (IPR) proceedings between the Patent Trial and Appeal Board (PTAB). LNC I, 2016 WL 4411419, at *3.

GC moved to dismiss all five claims, and we granted the motion in its entirety in an August 18, 2016 Memorandum and Order. See id. at *1. We held that under New York's choice-of-law rules, LNC's claims accrued in Louisiana and were subject to Louisiana's statutes of limitations (in addition to New York's) under section 202 of the New York Civil Practice Law and Rules (CPLR 202). Id. at *5. Under Louisiana law, all of LNC's claims were untimely under the applicable one-year statute of limitations and three-year statute of repose codified at section 9:5605 of the Louisiana Revised Statutes, and were therefore dismissed. Id. at *6-7. The Clerk of the Court entered judgment consistent with LNC I on August 19, 2016. 15 Civ. 9248 ECF No. 50.

### C.   GC Commences This Case

The same day judgment was entered in <u>LNC I</u>, August 19, 2016, GC initiated this action against LNC.  As we explained in an earlier memorandum and order in this action, GC "performed legal services for LNC . . . from 2010 until 2014, including representing LNC in a number of lawsuits involving intellectual property and other commercial claims," including the <u>Jackel</u> actions.  <u>Goldberg Cohen, LLP v. Luv N' Care, Ltd.</u> (<u>GC I</u>), No. 16 Civ. 6576, 2017 WL 3891688, at *1 (S.D.N.Y. Aug. 18, 2017), ECF No. 51.  GC alleged "that it and LNC had a retainer agreement . . . providing that [GC] would provide legal services, including representation in certain litigation matters, to LNC in exchange for a combination of weekly fees and contingency payments," <u>id.</u>, and that LNC, broadly, had failed to compensate GC as provided for under the agreement (and a subsequent oral modification thereof).

GC's complaint asserts six claims.  First, GC advances a breach of contract claim, contending LNC had agreed to pay 20 percent of any recovery in the <u>Jackel</u> litigations and subsequent litigation against Jackel's affiliates but had paid only 15 percent and that LNC had paid only a portion of the $2.25 million in weekly fees for the <u>Jackel</u> litigations.  Compl. ¶¶ 114-30, ECF No. 1. Second, GC asserts an unjust enrichment for the value of its services rendered in the <u>Jackel</u> litigations.  Compl. ¶¶ 131-38. Third, GC contends that LNC negligently dropped the Explora line

of cups from the Jackel actions and rejected a subsequent settlement proposal, which deprived GC of its share of the settlement proceeds and harmed GC's reputation. Compl. ¶¶ 139-54. Fourth, GC alleges breach of the implied covenant of good faith and fair dealing based on LNC's handling of the Jackel settlement. Compl. ¶¶ 155-62. Fifth, GC pleaded an account stated claim as to the amounts owed it for the Jackel litigations. Compl. ¶¶ 163-68. Finally, GC asserts that LNC's attorneys violated section 487 of the New York Judiciary Law by making frivolous malpractice allegations (in LNC's initial suit) and making false declarations to the Court, "all of which are part of LNC's deceitful and collusive attempts to evade payment to GC for GC's services in the Jackel case." Compl. ¶ 171; see Compl. ¶¶ 169-73.

### D.   LNC's Post-Judgment Motions and Appeal

On September 15, 2016 -- after GC filed its complaint in this action, but before LNC answered -- LNC moved to amend the judgment in LNC I pursuant to Rule 59(e) of the Federal Rules of Civil Procedure. As relevant here, the motion sought two forms of relief: (1) clarification that LNC I's dismissal of LNC's claims was not an adjudication on the merits, and (2) leave to amend to file a second amended complaint. 15 Civ. 9248 ECF No. 53. LNC also timely appealed, on September 16, 2016, the judgment entered in LNC I. 15 Civ. 9248 ECF No. 54. Because LNC had also moved to

7

amend the judgment, the Second Circuit stayed LNC's appeal pending

our resolution of that motion.  15 Civ. 9248 ECF No. 55.

The proposed second amended complaint that LNC sought leave

to file contained 17 claims.[7]  See Proposed Second Am. Compl., 15

Civ. 9248 ECF No. 59-1.  In addition to the five claims asserted

in LNC's first amended complaint, the proposed amended complaint

asserted three additional claims styled as breach of fiduciary

duty (Claims 6 through 8); one additional claim of fraudulent

concealment (Claim 9); seven additional claims styled as breach of

contract (Claims 10 through 16); and one additional claim seeking

a declaratory judgment of no liability (Claim 17).

We denied LNC's post-judgment motion in a November 10, 2016

Memorandum and Order.  See Luv N' Care Ltd. v. Goldberg Cohen, LLP

(LNC II), No. 15 Civ. 9248, 2016 WL 6820745 (S.D.N.Y. Nov. 10,

2016).  As to LNC's request that we clarify our dismissal was not

an adjudication on the merits, we reaffirmed that, under New York

law, "a dismissal on statute of limitations grounds 'is considered

to be on the merits, precluding relitigation of that issue in a

subsequent action,'" id. at *3 (quoting Meegan S. v. Donald T., 64

N.Y.2d 751, 752 (1984)); see also Bray v. N.Y. Life Ins., 851 F.2d

60, 64 (2d Cir. 1988) ("New York treats a dismissal on statute of

limitations grounds as a final judgment on the merits for res

---

[7] Perhaps tellingly, LNC included the case number of this case, No. 16
Civ. 6576, on its proposed amended complaint and not the case number of the
case in which it was actually filed, No. 15 Civ. 9248.

judicata purposes."), and held in unambiguous terms that <u>LNC I</u> "constitutes an adjudication on the merits" under New York law, <u>LNC II</u>, 2016 WL 6820745, at *3.[8] As to LNC's post-judgment request for leave to amend, we held that further leave to amend was unwarranted, as LNC had previously had ample opportunity to amend the complaint in the face of GC's limitations-based arguments. <u>See</u> <u>id.</u> LNC amended its notice of appeal to include this decision, too, and the Second Circuit resumed its consideration of LNC's appeal thereafter. 15 Civ. 9248 ECF No. 61.

## E.    LNC's First Set of Counterclaims

LNC answered GC's complaint in this case while its motion to amend the judgment and appeal were pending. ECF No. 11. LNC also included five counterclaims based on 18 theories of liability in its answer, identifying not only GC but also Goldberg and Cohen individually as defendants. These counterclaims largely paralleled the claims that LNC advanced in the second amended complaint that it sought leave to file in the related action following our issuance of <u>LNC I</u> (and for which leave was denied in <u>LNC II</u>). The first counterclaim, styled breach of fiduciary duty, advanced theories of (a) fraudulent billing practices, (b) failure to disclose information during the <u>Walgreen</u> action, and (c) the making of false representations to the state court presiding over

---

[8] We noted then that LNC "make[s] this application to avoid the preclusive effect of [<u>LNC I</u>] in a related lawsuit filed by Goldberg Cohen pending in this Court." <u>LNC II</u>, 2016 WL 6820745, at *3.

the _Jackel_ action -- the same three theories that LNC had previously sought to offer. The second counterclaim alleged fraudulent inducement (again mirroring the proposed second amended complaint). The third counterclaim, styled breach of contract, advanced the same seven theories previously offered: (a) the withholding of an improperly large share of settlement proceeds obtained in the _Jackel_ litigations; (b) the withholding of an improperly large share of settlement proceeds obtained in the _Cudlie_ litigation[9]; (c) the withholding of weekly advances made above a $1.25 million cap set forth in the Retainer Agreement; (d) the assignment of work to local counsel beyond the scope permitted by the Retainer Agreement; (e) the refusal to pursue an appeal of the PTAB decision invalidating the '465 patent to the Federal Circuit; (f) the refusal to file certain breach of contract and patent infringement claims following the dismissal of the second _Jackel_ action; and (g) the refusal to file suit against Inzone.[10] The fourth counterclaim, styled "equitable recoupment," offered six theories of legal malpractice: the same five alleged in the initial complaint that we dismissed in _LNC I_ (and were reoffered in the proposed second amended complaint for which leave to file was denied in _LNC II_), as well as an additional theory: GC's failure to discern the full extent of the defendants' infringing

---

[9] The pleadings present no details regarding the _Cudlie_ litigation.
[10] The pleadings also present no details regarding the potential litigation against Inzone.

sales and profits in the Walgreen action.  Finally, LNC asserted
the same claim for declaratory judgment offered as the final claim
in its proposed second amended complaint.

After LNC filed its answer and its numerous counterclaims,
the parties exchanged a number of pre-motion letters anticipating
a number of motions.  ECF Nos. 12-18.  GC, Goldberg, and Cohen
contemplated a Rule 12(b)(6) motion to dismiss a number of
counterclaims, while LNC contemplated a Rule 12(c) motion for
judgment on the pleadings.  GC filed a further pre-motion letter,
contemplating a motion for partial summary judgment on a number of
its claims, as plaintiff, against LNC.

Inundated with pre-motion letters and responses, the Court
held a conference on January 19, 2017.  We concluded, with the
assent of the parties, that allowing GC to proceed on its
contemplated motion for partial summary judgment was proper.  See
Jan. 19, 2017 Hr'g Tr. 44:13-45:4, ECF No. 29.  By contrast,
counterclaim defendants' contemplated motion to dismiss certain of
LNC's counterclaims could "not be resolved sooner than the Second
Circuit may resolve the appeal" taken from LNC I and LNC II, and
that any such motion would await the Second Circuit's decision on
the appeal.  Jan. 19, 2017 Hr'g Tr. 44:7-11.  We emphasized, at
the time, that GC, Goldberg, and Cohen were "allowed to move to
dismiss a claim before they answer it."  Jan. 19, 2017 Hr'g Tr.

14:3-4.[11]  GC did move for partial summary judgment, which we denied in an August 18, 2017 Memorandum and Order.  See GC I, 2017 WL 3891688.

### F.  The Second Circuit's Affirmance of LNC I and LNC II

Three days later -- August 21, 2017 -- the Second Circuit resolved LNC's appeal from our decisions in LNC I and LNC II.  See Luv N' Care Ltd. V. Goldberg Cohen, LLP (LNC III), 703 F. App'x 26 (2d Cir. 2017) (summary order).

The Second Circuit concluded, as a threshold matter, that LNC's claims accrued in Louisiana such that Louisiana statutes of limitations were properly applied under the borrowing rule of section 202 of the New York CPLR.  Id. at 28.  Turning to the five claims that LNC asserted, the Second Circuit held that LNC's first claim (based on GC's failure to include allegations related to an additional product line in the Jackel litigation) was time-barred under section 9:5605 of the Louisiana Revised Statutes, id. at 29-30, and that LNC's remaining claims (relating to alleged malpractice in the Philips litigation, Royal King litigation, and the two IPR proceedings concerning patents at issue in the Toys "R" Us litigation) were time-barred regardless of whether article

---

[11] Apparently forgetting that we had enunciated this basic observation as to how Rule 12 of the Federal Rules of Civil Procedure operated, LNC sought the entry of default against GC, Goldberg, and Cohen.  See ECF No. 40.  As we noted in striking the Clerk of the Court's subsequent entry of default, LNC's attempt was "an abusive waste of the time of [GC] and the Court."  May 11, 2017 Order, ECF No. 46.

3492 of the Louisiana Civil Code or section 9:6505 of the Louisiana Revised Statutes applied, id. at 30.

Finally, turning to our decision in LNC II, the Second Circuit held that we properly exercised our discretion in LNC II in denying LNC yet another opportunity for leave to amend, id. at 31. The mandate issued to this court on September 15, 2017. See 15 Civ. 9248 ECF No. 62.

### G. LNC's Second Set of Counterclaims

One might reasonably have expected the Second Circuit's decision in LNC III, affirming our decisions in LNC I and LNC II, would be the end of the line for LNC's counterclaims in this action.[12] Apparently not, as the conduct of the parties in these cases has been nothing if not short on reason. Shortly after the issuance of LNC III, LNC initiated a letter exchange where it purported to note that GC had failed to timely answer its counterclaims -- despite the understanding reached during the January 19, 2017 conference and our subsequent order of May 11, 2017 specifically noting that "a plan for the management of this case was established with the concurrence of all parties that did not contemplate plaintiff's answering defendant's counterclaims."

---

[12] Indeed, counsel for LNC noted that "it may be to the Court's benefit to schedule in a decision by the Second Circuit before investing too much judicial resource in these motions, because if the Court of Appeals were to send the case back, it would certainly affect very dramatically the claims in this case." Jan. 19, 2017 Hr'g Tr. 12:7-9. The Second Circuit's ruling affirming the judgment entered following LNC I, of course, has an equally significant effect.

13

May 11, 2017 Order, ECF No. 46. We reminded the parties, in a letter dated September 13, 2017, ECF No. 59, of those occurrences in the not-so-distant past. LNC was given ten days in which to amend its answer and counterclaim, and GC would move to dismiss afterwards.

LNC amended its answer and counterclaim on September 22, 2017, ECF No. 60, the number of counterclaims having increased (again) from 18 to 21. The amended counterclaims advanced the same 18 theories offered in LNC's initial counterclaims, but recharacterized two of its fiduciary duty claims: the claim based on Cohen's improper billing practices was recast as a conversion claim (Amended Counterclaim 1), and the claim based on false representations to the Jackel state court was recast as an abuse of process claim and broadened to include false representations to multiple courts, including this one (Amended Counterclaim 5). LNC also asserted three new claims: (1) a breach of contract and fiduciary duty claim premised on GC's failure to return files after termination of the Agreement (Amended Counterclaim 2); (2) a breach of fiduciary duty claim based on Cohen's improper delegation of work to Shiboleth (Amended Counterclaim 3); and (3) a catchall malpractice claim for as-yet undiscovered instances of malpractice (Amended Counterclaim 14). The motion under consideration followed. See ECF No. 63.

14

## II. Discussion

We first set forth the legal standards governing our consideration of the pending motion before turning to their application to LNC's counterclaims here.

### A. Legal Standards

#### 1. Rule 12(b)(6) Motions

On a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), we accept as true all factual allegations in the complaint and draw all reasonable inferences in the plaintiff's favor. ATSI Commc'ns, Inc. v. Shaar Fund, Ltd., 493 F.3d 87, 98 (2d Cir. 2007). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). In deciding the motion, the Court may consider exhibits attached to the complaint and documents incorporated by reference into the complaint. Fed. R. Civ. P. 10(c); Chambers v. Time Warner, Inc., 282 F.3d 147, 152 (2d Cir. 2002). We may also take judicial notice of the public docket sheets in the litigations that are the subject of counterclaimants' malpractice claims. See Mangiafico v. Blumenthal, 471 F.3d 391, 398 (2d Cir. 2006).

"A court may consider a [claim preclusion] defense on a Rule 12(b)(6) motion to dismiss when the court's inquiry is limited to

the plaintiff's complaint, documents attached or incorporated therein, and materials appropriate for judicial notice." TechnoMarine SA v. Giftports, Inc., 758 F.3d 493, 498 (2d Cir. 2014). "The burden is on the party seeking to invoke [claim preclusion] to prove that the doctrine bars the second action." Brown Media Corp. v. K&L Gates, LLP, 854 F.3d 150, 157 (2d Cir. 2017). Similarly, a court may consider a statute of limitations defense on a Rule 12(b)(6) motion to dismiss "if the defense appears on the face of the complaint." Staehr v. Hartford Fin. Servs. Grp., 547 F.3d 406, 425 (2d Cir. 2008); see Ghartey v. St. John's Queens Hosp., 869 F.2d 160, 162 (2d Cir. 1989). The defendant also bears the burden of proving that an applicable statute of limitations has expired. Bano v. Union Carbide Corp., 361 F.3d 696, 710 (2d Cir. 2004).

## 2. Claim Preclusion

Issue preclusion and claim preclusion are 'two separate and distinct wings of preclusion law." N. Assur. Co. of Am. v. Square D Co., 201 F.3d 84, 87 n.2 (2d Cir. 2000). "Different rules and restrictions apply to each doctrine, and although some courts fail to distinguish between the two, it is important . . . to be cognizant of their distinctiveness." Burgos v. Hopkins, 14 F.3d 787, 789-90 (2d Cir. 1994) (citations omitted). Broadly speaking, issue preclusion, or collateral estoppel, "bars successive litigation of an issue of fact or law actually litigated and

resolved in a valid court determination essential to the prior judgment, even if the issue recurs in the context of a different claim." Wyly v. Weiss, 697 F.3d 131, 140 (2d Cir. 2012) (internal quotation marks omitted). "Under the doctrine of res judicata, or claim preclusion, a final judgment on the merits of an action precludes the parties or their privies from relitigating issues that were or could have been raised in that action." Flaherty v. Lang, 199 F.3d 607, 612 (2d Cir. 1999) (internal quotation marks omitted) (emphasis omitted).

Here, we are concerned with claim preclusion,[13] and the question arises whether federal principles of claim preclusion or New York principles of claim preclusion apply in this diversity case. "[F]ederal common law governs the claim-preclusive effect of a dismissal by a federal court sitting in diversity." Semtek Int'l Inc. v. Lockheed Martin Corp., 531 U.S. 497, 508 (2001). In most cases, however, we are to "adopt[], as the federally prescribed rule of decision, the law that would be applied by state courts in the State in which the federal diversity court sits."

---

[13] We use the terms "claim preclusion" and "issue preclusion" throughout, as the term "res judicata" is often used to refer to both doctrines of claim preclusion and issue preclusion. See, e.g., Ryan v. N.Y. Tel. Co., 62 N.Y.2d 494, 500 (1984) (describing issue preclusion as "a narrower species of res judicata"); see also 18 Charles A. Wright et al., Federal Practice & Procedure § 4402 (3d ed.) (Westlaw 2018).

Id.[14]   We accordingly apply the claim preclusion principles recognized under New York law.

In New York, "[t]he doctrine of [claim preclusion] precludes a party from litigating a claim where a judgment on the merits exists from a prior action between the same parties involving the same subject matter." Josey v. Goord, 9 N.Y.3d 386, 389 (2007) (internal quotation marks omitted). "Under New York's transactional approach to the rule, 'once a claim is brought to a final conclusion, all other claims arising out of the same transaction or series of transactions are barred, even if based upon different theories or if seeking a different remedy.'" Id. at 389-90 (quoting O'Brien v. City of Syracuse, 54 N.Y.2d 353, 357 (1981)). That is, claim preclusion "applies not only to claims actually litigated but also to claims that could have been raised in the prior litigation." In re Estate of Hunter, 4 N.Y.3d 260, 269 (2005). "Afterthoughts or after discoveries" -- even when "understandable and morally forgivable" -- "are generally not enough to create a right to litigate anew." Reilly v. Reid, 45 N.Y.2d 24, 28 (1976). As the New York Court of Appeals has explained, this "'transactional' approach to [claim preclusion] is arguably broader than the principles adopted by the federal

---

[14] The Supreme Court acknowledged in Semtek, however, that "[t]his federal reference to state law will not obtain, of course, in situations in which the state law is incompatible with federal interests." 531 U.S. at 509. There is no suggestion that this case represents one of those situations, and indeed, both parties argue that New York claim preclusion principles apply.

courts." <u>Ins. Co. of the State of Pa. v. HSBC Bank USA</u>, 10 N.Y.3d 32, 38 n.3 (2008).[15]

### 3. Recoupment

Section 203(d) of the New York Civil Practice Law and Rules (CPLR 203(d)) "codifies the doctrine of equitable recoupment."[16] <u>118 E. 60th Owners, Inc. v. Bonner Props., Inc.</u>, 677 F.2d 200, 203 (2d Cir. 1982). Specifically, under CPLR 203(d), "[a] defense or counterclaim is not barred if it was not barred at the time the claims asserted in the complaint were interposed, except that if the defense or counterclaim arose from the transactions, occurrences, or series of transactions or occurrences, upon which a claim asserted in the complaint depends, it is not barred to the extent of the demand in the complaint notwithstanding that it was barred at the time the claims asserted in the complaint were interposed." N.Y. C.P.L.R. § 203(d).

Put differently, "claims and defenses that arise out of the same transaction as a claim asserted in the complaint are not barred by the Statute of Limitations, even though an independent action by defendant might have been time-barred at the time the action was commenced." <u>Bloomfield v. Bloomfield</u>, 97 N.Y.2d 188,

---

[15] Accordingly, LNC's reliance on a number of cases addressing federal principles of claim preclusion, including this Court's decisions in <u>Mezzacappa Bros., Inc. v. City of New York</u>, No. 03 Civ. 223, 2003 WL 22801429 (S.D.N.Y. Nov. 24, 2003) (analyzing whether claims advanced under 42 U.S.C. § 1983 were subject to claim preclusion), is unpersuasive.

[16] Prior to July 1, 1992, section 203(d) was codified at section 203(c). <u>See</u> 1992 N.Y. Sess. Laws ch. 216, § 1.

193 (2001) (citing N.Y. C.P.L.R. § 203(d)). "The provisions of CPLR 203(d) allow a defendant to assert an otherwise untimely claim which arose out of the same transactions alleged in the complaint, but only as a shield for recoupment purposes, and does not permit the defendant to obtain affirmative relief." Carlson v. Zimmerman, 63 A.D.3d 772, 774 (2d Dep't 2009) (quoting DeMille v. DeMille, 5 A.D.3d 428, 429 (2d Dep't 2004)); see also Cal. Capital Equity, LLC v. IJKG, LLC, 151 A.D.3d 650, 651 (1st Dep't 2017) ("If proved, the counterclaim could be used defensively as a shield for recoupment purposes, but [defendant] could not obtain any affirmative relief, such as disgorgement.").

"New York courts have generally required a tight nexus between claim and counterclaim before section 203(d) will save a counterclaim from an otherwise-applicable statute of limitation." Macaluso v. U.S. Life Ins. Co., No. 03 Civ. 2337 (GEL), 2004 WL 1497606, at *7 (S.D.N.Y. July 2, 2004); see also Distribuidora de Discos Karen C. por A. v. Universal Music Grp., Inc., No. 13 Civ. 7706 (JPO), 2017 WL 1019697, at *6 (S.D.N.Y. Mar. 15, 2017); Estate of Mantle v. Rothgeb, 537 F. Supp. 2d 533, 544 (S.D.N.Y. 2008) (Wood, J.). The claim and counterclaim must therefore share substantially overlapping facts in order for the counterclaim to fall within the ambit of CPLR 203(d). For example, even when the same contract is at issue, the Fourth Department has "refused to allow a counterclaim to proceed pursuant to section 203[(d)] where

the action concerned nonpayment of monies due under a contract and the counterclaim involved alleged overpayments of monies due in earlier years of the contract." Prospect Grp., Inc. v. Kirby, No. 91 Civ. 3390 (PKL), 1992 WL 400732, at *12 (S.D.N.Y. Dec. 23, 1992) (citing Rochester Health Network, Inc. v. Rochester Hospital Serv. Corp., 123 A.D.2d 509 (4th Dep't 1986)); see also Distribuidora de Discos, 2017 WL 1019697, at *6 (acknowledging that "both claims implicate the [same contract]," but holding section 203(d) inapplicable because the claims "will involve development of different facts and relate to different time periods and different actions by the parties").

**B.  Application**

Having set out the framework guiding our analysis, we turn to its application to the 21 counterclaims that LNC asserts.

We note at the outset the profound tension between LNC's arguments as to claim preclusion and its arguments as to recoupment.  LNC must argue not only that its counterclaims are not part of the same transaction or series of transactions that were at issue in LNC I for claim preclusion purposes, but also that its counterclaims are part of the same transaction (under the Retainer Agreement) for purposes of rendering them timely under the recoupment provisions of CPLR 203(d).  These arguments are irreconcilable.

Incredibly -- in both the "extraordinary" and "not credible"
senses of the word -- LNC argues that CPLR 203(d) resuscitates
claims barred by claim preclusion because it "makes no distinction
between claims barred under the Statute of Limitations or res
judicata." [LNC Opp'n 1 n.1.] This argument is unpersuasive for
at least three reasons. First, Bloomfield held in unambiguous
terms that, under CPLR 203(d), "claims and defenses that arise out
of the same transaction as a claim asserted in the complaint are
not barred by the Statute of Limitations." 97 N.Y.2d at 193
(emphasis added). Second, this holding is consistent with the
title of CPLR 203 being "Method of computing periods of limitation
generally" (emphasis added). Finally, LNC's argument is in
significant tension with CPLR 203(d) being a codification of
equitable principles of recoupment, and LNC identifies no
authority suggesting that allowing it to assert claim-barred
claims under the guise of recoupment would be equitable. See 118
E. 60th Owners, Inc., 677 F.2d at 203. Indeed, it would not be.
Ultimately, there is simply no indication that CPLR 203(d) applies
to anything other than claims barred by an applicable statute of
limitations, and nothing in the text or structure of CPLR 203(d)
suggests that the Legislature, in so enacting, intended to create
a truck-sized loophole to well-established principles of claim
preclusion.

### 1. Claims Previously Asserted in <u>LNC I</u>

We dismiss at the outset amended counterclaims 16 through 20, which allege legal malpractice relating to (1) GC's failure to seek attorneys' fees in the <u>Royal King</u> action; (2) GC's failure to include a certain product line in the <u>Jackel</u> actions;[17] (3) GC's failure to rescind prosecution disclaimers in the <u>Philips</u> action; (4) the invalidation of the '465 patent in an IPR proceeding before the PTAB; and (5) the invalidation of the '439 patent in another IPR proceeding before the PTAB. Amended counterclaims 16 through 20 assert the same causes of action as the five claims previously asserted by LNC in the related case, and these precise claims were adjudicated on the merits and dismissed in <u>LNC I</u>, with judgment entered to that effect.[18] These claims, axiomatically, involve the same "transaction or series of transactions" resolved in <u>LNC I</u>,

---

[17] LNC's amended counterclaims refer to an excluded line of "Penguin Valve cup products," <u>e.g.</u>, Am. Countercl. ¶¶ 302, 310, though LNC also refers to "the Explora/Penguin Valve cup products" at certain points, Am. Countercl. ¶ 317. Regardless of whether the "Explora" line refers to the same products as the "Penguin Valve" line, the claim is barred by claim preclusion. Even assuming that the two descriptors refer to different products and are not a deliberate attempt by LNC to mislead the Court, there is no reason that a malpractice claim based on exclusion of the "Penguin Valve" line could not have been asserted at the same time as LNC's claim based on the "Explora" line was asserted in the related case. <u>See</u> <u>LNC I</u>, 2016 WL 4411419, at *2.

[18] LNC frivolously contends that the judgment entered following <u>LNC I</u> was not an adjudication on the merits, our express holding to the contrary in <u>LNC II</u>, 2016 WL 6820745, at *3, notwithstanding. LNC's reliance on <u>Simpson v. Melton-Simpson</u>, No. 10 Civ. 6347, 2011 WL 4056915 (S.D.N.Y. Aug. 29, 2011), and our analysis there of claim preclusion under <u>New Jersey</u> law, is wholly misplaced. New Jersey is not New York but, as it turns out, New Jersey law considers a dismissal on statute of limitations grounds an adjudication on the merits, <u>see</u> <u>id.</u> at *4 (collecting cases); <u>see also</u> <u>Walker v. Choudhary</u>, 40 A.3d 63, 75 (N.J. Super. Ct. App. Div. 2012) -- just as New York law does, <u>see</u> <u>LNC II</u>, 2016 WL 6820745, at *3.

and are therefore dismissed on the basis of claim preclusion.  See

Josey, 9 N.Y.3d at 389-90.[19]

##### 2.   Claims Arising Under the Retainer Agreement

Next, accepting arguendo LNC's argument that the "fee

arrangement that [GC is] asserting was part of an integrated whole

and cannot be treated in isolation" and that all claims based on

the Retainer Agreement (or the Jackel litigations specifically)

"arose out of the same transaction and occurrence as the asserted

claims" in GC's complaint here (such that LNC's claims may be

resuscitated under CPLR 203(d) if time-barred) [LNC Opp'n 1-2],

then all claims based on the Retainer Agreement are also barred

based on claim preclusion.  If these claims arise out of "the same

transaction" for purposes of CPLR 203(d) as LNC argues, they

necessarily arise out of "the same transaction or transactions"

for purposes of claim preclusion.  They are not revived by CPLR

203(d) which, as we have explained, does not resuscitate claims

---

[19] LNC identifies no authority holding that CPLR 203(d) applies in the context of a case like this one -- when the party seeking to avail itself of CPLR 203(d) was the plaintiff in a prior suit over the same subject matter, and we find none.  This dearth of authority is unsurprising, given that equitable recoupment, as codified in CPLR 203(d), is intended to protect an entity who chooses not to initiate litigation against another entity but subsequently finds itself sued by that entity.  Indeed, we have difficulty imagining a situation where CPLR 203(d) revives time-barred claims in federal court when there has been a previous federal suit over the same subject matter between the same parties.  If the party seeking to avail itself of CPLR 203(d) was the plaintiff in the first action, its counterclaims in the second action will be barred by claim preclusion.  If the party seeking to avail itself of CPLR 203(d) was the defendant in the first action, its counterclaims in the second action will either be barred by claim preclusion (if previously raised) or barred as waived under the compulsory counterclaim rule of Rule 13(a) of the Federal Rules of Civil Procedure (if not previously raised).

that are barred on any basis other than an applicable statute of limitations, such as claim preclusion. We accordingly dismiss amended counterclaims 2, 6, 7, 8, 9, 10, 11, 12, 13, 14, and 15.[20]

### 3. Amended Counterclaims 1 and 3

Amended counterclaim 1, LNC's claim for conversion based on Cohen's allegedly fraudulent billing practices regarding work performed by Shiboleth attorneys, does not arise out of the Retainer Agreement between GC and LNC. Rather, it involves Cohen's conduct prior to the signing of the Retainer Agreement and indeed, prior to the formation of GC in the first instance. Therefore, again accepting LNC's broad characterization of what constitutes a "transaction" for purposes of our analysis, the claim is not barred by claim preclusion. The mere fact that LNC previously asserted this claim in an amended complaint -- proposed following the entry of judgment and for which leave to file was never received, see LNC II, 2016 WL 6820745, at *3 -- is insufficient for claim preclusion to apply. Amended counterclaim 3, LNC's claim for breach of fiduciary duty based on the improper assignment of work to Shiboleth attorneys and the fraudulent billing practices underlying amended counterclaim 1, similarly does not arise out of the Retainer Agreement between GC and LNC and is therefore not barred by claim preclusion.

---

[20] Amended counterclaim 14 fails for the additional reason that it contains only speculation and naked legal conclusions as to the existence of additional malpractice.

However, these claims are time-barred under section 9:5605 of the Louisiana Revised Statutes, being a recharacterized malpractice claim asserted more than one year from the date on which the conduct was or should have been discovered and more than three years after the conduct in question. Section 9:5605 is clear that all actions "arising out of an engagement to provide legal services" are subject to its limitations, "whether based upon tort, or breach of contract, or otherwise." La. Rev. Stat. § 9:5605(A) (emphasis added); see Andre v. Golden, 750 So. 2d 1101, 1104 (La. Ct. App. 5th Cir. 1999); Carter v. Schott, 707 So. 2d 1048, 1050 (La. Ct. App. 1st Cir. 1998). LNC argues that it "did not become aware of Cohen's double billing practices [or theft] until April 2016" [LNC Opp'n 23; see LNC Opp'n 22], but LNC also plainly alleges that "in October to December 2014, LNC discovered Cohen's fraudulent scheme to falsify the Shiboleth LLP billing records and fraudulently induce LNC to pay amount [sic] to Shiboleth LLP that were not owed to Shiboleth LLP," Am. Countercl. ¶ 44; see also Am. Countercl. ¶¶ 60, 63.[21] Because LNC did not file any incarnation of these claims until September 2016 -- almost two years after their alleged discovery -- they are time-barred.

---

[21] LNC also alleges, at another point, that it "discovered Cohen's fraudulent billing scheme in October to December 2015." Am. Countercl. ¶ 90. While we have no reason to afford LNC the benefit of any doubt, we nonetheless do so and assume that this is a typo rather than a deliberate attempt to mislead the Court. We, however, apply December 2014 as the discovery date.

Nor are these claims revived by CPLR 203(d), for two reasons. First, these claims are based on conduct undertaken by Cohen, as distinguished from GC (or Goldberg). While Cohen is a name partner of GC, he is -- despite LNC's repeated references to "Plaintiff Cohen" [LNC Opp'n 22] -- not in fact a plaintiff in this action. These claims naming a non-plaintiff as a counterclaim defendant cannot be characterized as recoupment -- CPLR 203(d) does not permit a counterclaim defendant to assert a time-barred claim for affirmative relief. <u>Cal. Capital Equity</u>, 151 A.D.3d at 651; <u>Carlson</u>, 63 A.D.3d at 774. Second, as LNC acknowledges, the conduct underlying these claims "took place prior to the Parties entering into the Retainer Agreement" and does not implicate the Retainer Agreement [LNC Opp'n 22]; it therefore does not share a "tight nexus" with the Retainer Agreement and the <u>Jackel</u> litigations that took place thereunder. The lack of substantial factual overlap renders CPLR 203(d) inapplicable. <u>See, e.g.</u>, <u>Distribuidora de Discos</u>, 2017 WL 1019697, at *6.

### 4. Remaining Claims[22]

Amended counterclaim 5, LNC's claim for abuse of process based on GC's allegedly false representations to multiple courts (including this one) that LNC agreed to increase fees, and amended counterclaim 21, LNC's claim seeking a declaration of no liability,

---

[22] We dismiss amended counterclaim 4 as LNC has offered no argument as to why that claim should not be dismissed. Rather, the only reference to this claim in LNC's opposition is an acknowledgement that GC seeks to dismiss it on claim preclusion grounds. [LNC Opp'n 2.]

also are not barred by claim preclusion.  Again, the mere inclusion in a complaint proposed after the entry of judgment, and which was never filed, is not sufficient to trigger claim preclusion.  GC again offers no other bases for their dismissal.[23]  The motion is therefore denied as those two claims, though we express no view as to their merits or their viability moving forward.

## III. Conclusion

The motion to dismiss LNC's counterclaims is granted in part and denied in part.  The claim-preclusive effect of the judgment entered following our decisions in <u>LNC I</u> and <u>LNC II</u> -- as affirmed by the Second Circuit in <u>LNC III</u> -- preclude LNC from relitigating counterclaims 2, 4, and 6 through 20.  While claim preclusion does not mandate the dismissal of amended counterclaims 1 and 3, those claims are barred by the relevant statute of limitations and are not resuscitated under the principles of recoupment codified at CPLR 203(d).  Claim preclusion also does not bar amended counterclaims 5 and 21, and the motion is therefore denied as to those claims.

The Clerk of the Court is respectfully directed to terminate the motions pending at ECF Nos. 63 and 64.  The parties shall

---

[23] GC contends, in reply, that amended counterclaim 5 relates to the <u>Walgreen</u> action and is therefore time-barred.  [GC Reply 7.]  While amended counterclaim <u>6</u> so relates, amended counterclaim 5 does not.  <u>See</u> Am. Countercl. ¶¶ 98-151.

appear for a status conference before the Court on October 29,
2018 at 3:45 p.m.

**SO ORDERED.**

Dated:     New York, New York
           September 🕮, 2018

NAOMI REICE BUCHWALD
UNITED STATES DISTRICT JUDGE